# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAIVA KLEINAUSKAITE,

        Petitioner,

        v.

CLAIR DOLL,

        Respondent.

No. 4:17-CV-02176

(Judge Brann)

## MEMORANDUM OPINION

### JULY 23, 2019

On November 21, 2018, this Court granted Daiva Kleinauskaite's Petition for a Writ of Habeas Corpus. Pursuant to the Equal Access to Justice Act ("EAJA"), Ms. Kleinauskaite now moves this Court for an order directing the Government to compensate her for the attorneys' fees she incurred litigating that petition. For the following reasons, that motion will be granted in part.

## I. BACKGROUND

Ms. Kleinauskaite, a Lithuanian citizen, entered the United States in 2009. Although authorized to stay here for only 90 days, she never left, and has been in this country ever since.

On May 17, 2017, Ms. Kleinauskaite was arrested in Pennsylvania for driving under the influence. She was taken into custody by the United States Immigration and Customs Enforcement that same day. Facing removal to Lithuania, she

immediately applied for asylum, arguing that her sexuality made it dangerous for her to return to her home country.

After an August 30, 2017 hearing, an immigration judge denied Ms. Kleinauskaite's asylum application as untimely, because it was filed more than one year after her arrival in the United States and because he found no circumstances that would excuse that delay. The Board of Immigration Appeals ("BIA") affirmed the immigration judge's ruling. On June 26, 2018, while the matter was on further appeal to the United States Court of Appeals for the Third Circuit, the Government moved to remand the case back to the BIA for reconsideration. The BIA, on remand, reversed itself and remanded the case back to the immigration judge for a new hearing, which is currently scheduled for January 2020.

On November 27, 2017, while her initial appeal to the BIA was pending, Ms. Kleinauskaite petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Her petition raised two main arguments. First, she argued that she was being detained pursuant to 8 U.S.C. § 1226(a) and that she was therefore entitled to an individualized bond hearing pursuant to that statute's implementing regulations. Second, she argued that the Due Process Clause of the United States Constitution mandated an individualized bond hearing, regardless of the statutory basis of her detention. The Government opposed this petition on December 21, 2017. It also raised two main arguments. First, it argued that Ms. Kleinauskaite was being

detained pursuant to 8 U.S.C. § 1187(c)(2)(E) and that the implementing regulations of 8 U.S.C. § 1226 therefore had no application to her. Second, it argued that Ms. Kleinauskaite's detention was not unreasonable, such that a bond hearing was constitutionally required.

On February 28, 2018, Chief Magistrate Judge Susan E. Schwab ordered the parties to file briefs addressing the impact on Ms. Kleinauskaite's petition, if any, of a recent decision of the Supreme Court.[1] When that briefing was complete, on October 9, 2018, Judge Schwab issued her Report and Recommendation.[2] Although Judge Schwab rejected Ms. Kleinauskaite's statutory argument—i.e., rejected Ms. Kleinauskaite's argument that she was detained pursuant to 8 U.S.C. § 1226(a) and therefore entitled to an individualized bond hearing pursuant to that statute's implementing regulations—Judge Schwab determined that Ms. Kleinauskaite's continued detention without a bond hearing violated the Due Process Clause. Judge Schwab therefore recommended that this Court grant Ms. Kleinauskaite's petition.

On November 21, 2018, over the Government's objection, this Court adopted Judge Schwab's Report and Recommendation; granted Ms. Kleinauskaite's petition; and ordered the Government to hold an individualized bond hearing for Ms. Kleinauskaite at which the Government "b[ore] the burden of proving that [Ms.

---

[1]    ECF No. 10.

[2]    ECF No. 23.

Kleinauskaite's] continued detention [wa]s necessary to fulfill the purposes of the [statute under which she is detained]."[3] That hearing was held on November 30, 2018, and resulted in Ms. Kleinauskaite's release on $7,500 bond.[4] The Government appealed this Court's decision to the Third Circuit but eventually stipulated to the appeal's dismissal. Ms. Kleinauskaite now moves for attorneys' fees pursuant to the EAJA.

## II.    DISCUSSION

The EAJA states that, in civil actions brought against the United States, a court "shall" award "reasonable attorneys['] fees" incurred by the prevailing party "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."[5] The Government does not dispute that Ms. Kleinauskaite was the prevailing party or that the number of hours expended, or the hourly rate charged, by Ms. Kleinauskaite's counsel was unreasonable.[6] The Government also does not argue that there are any special circumstances that would make an award unjust. The Government does, however, argue that its position was substantially justified.

---

[3]    ECF No. 30.

[4]    ECF No. 37-1, Ex. F.

[5]    28 U.S.C. § 2412(d)(1)(A).

[6]    The Government also does not dispute that Ms. Kleinauskaite's net worth qualifies her for an EAJA award. *See* 28 U.S.C. § 2412(d)(2)(B) (limiting the availability of fees to individuals with a net worth of less than $2,000,000 at the time the civil action was filed).

A position by the Government is substantially justified when it has a "reasonable basis in both law and fact."[7] And in a case involving agency action, the Government's position "includes . . . the agency position that made the litigation necessary in the first place."[8] Therefore, to avoid paying Ms. Kleinauskaite's attorneys' fees, the Government must show that its detention of Ms. Kleinauskaite without a bond hearing was reasonable.

For the reasons that follow, this Court finds that Ms. Kleinauskaite's detention became unreasonable after twelve months.[9] It will therefore order the Government to pay all attorneys' fees incurred by her after May 17, 2018.[10]

---

[7] *Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).

[8] *Id.*

[9] *See Mendoza-Ordonez v. Lowe*, 2019 WL 1410893 (M.D. Pa. Mar. 28, 2019) ("[The Government's] position that Petitioner's removal was reasonably foreseeable *and that this remained the case through the time when the habeas petition was decided* . . . was not substantially justified.").

[10] It is true that the EAJA requires Courts to consider the agency's litigation position as well as the agency's underlying action. *See Johnson v. Gonzales*, 416 F.3d 205, 210 (3d Cir. 2005) ("[I]n immigration cases, the Government must meet the substantially justified test twice— once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action."). And it is also true that, if *detention* became unreasonable after twelve months, it does not necessarily follow that the Government's *litigation position* vis-à-vis the reasonableness of that detention became unreasonable at the twelve-month period. However, awarding all attorneys' fees incurred after the twelve-month mark—when detention *actually* became unreasonable—will necessarily include all attorneys' fees incurred after the point at which it became unreasonable *to argue* that detention became unreasonable.

### A. Detention of Aliens During Deportation Proceedings

Reaching a conclusion on this issue requires a review of case law analyzing and interpreting statutes that authorize the Government to detain aliens during the removal process. Two such statutes are relevant for present purposes: 8 U.S.C. § 1226(c) and 8 U.S.C. § 1231(a)(6). Both will be discussed below.

#### 1. *Zadvydas*

In its 2001 decision in *Zadvydas v. Davis*,[11] the Supreme Court considered the habeas petitions of two aliens being detained pursuant to 8 U.S.C. § 1231(a)(6). This statute indicates that the Government "may" detain certain aliens after those aliens have been ordered removed from the United States, while actual removal is being effectuated. Both aliens in *Zadvydas* were subject to removal orders and otherwise qualified for detention under § 1231(a)(6), but the Government had been unable to actually effectuate their removal.[12] Facing "potentially permanent" detention, the petitioners challenged the statute's constitutionality.[13]

The Supreme Court began its analysis by recognizing that "[f]reedom from imprisonment lies at the heart of the liberty that [the Due Process] Clause protects" and that "[a] statute permitting indefinite detention of an alien would raise a serious

---

[11]   533 U.S. 678 (2001).

[12]   *Id.* at 684-85.

[13]   *Id.* at 691.

constitutional problem," especially in light of that court's previous decisions requiring either "adequate procedural protections" before detention is permitted in criminal proceedings or "special justification[s]" before detention is permitted in "certain special and narrow nonpunitive circumstances."[14] The Supreme Court then rejected the Government's two asserted interests in petitioners' detention. First, the court rejected the Government's asserted interest in "ensuring the appearance of aliens at future immigration proceedings," since "removal seem[ed] a remote possibility at best" for these petitioners.[15] And second, the court rejected the Government's asserted interest in "preventing danger to the community," since detention under the statute was not "limited to specially dangerous individuals and subject to strong procedural protections" but instead applied "broadly to aliens ordered removed for many and various reasons, including tourist visa violations" and was subject to no procedural check other than "administrative proceedings, where the alien bears the burden of proving he is not dangerous."[16]

The constitutional problems thus highlighted, the Supreme Court queried whether there was "any clear indication of congressional intent to grant the [Government] the power to hold indefinitely in confinement an alien ordered

---

[14]  *Id.* at 690.

[15]  *Id.*

[16]  *Id*. at 691-92.

removed."[17]   Finding none, the court used the constitutional avoidance canon to interpret the statute as allowing detention only for a period "reasonably necessary to bring about [an] alien's removal from the United States."[18]   Clarifying, the court noted that six months of detention was presumptively reasonable, but that detention beyond that period was permissible only if the Government was able to show a "significant likelihood of removal in the reasonable foreseeable future."[19]   The court indicated, however, that "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[20]

### 2.   *Demore*

In its 2003 decision in *Demore v. Kim*,[21] the Supreme Court considered the habeas petition of an alien being detained pursuant to 8 U.S.C. § 1226(c).  This statute authorizes the Government to detain certain aliens—i.e., those convicted of specific, serious crimes—pending a decision on whether or not those aliens should be removed from the United States.[22]  The alien in *Demore* did not dispute that he

---

[17]   *Id.*

[18]   *Id.*

[19]   *Id.*

[20]   *Id.*

[21]   538 U.S. 510 (2003)

[22]   Detention authorized by 8 U.S.C. §1226(c), therefore, would necessarily come earlier in time than detention authorized by 8 U.S.C. §1231(a)(6).  The dividing point between those areas of detention would be the issuance of a removal order for the alien at issue.

had been convicted of a qualifying predicate crime or that he was deportable under the law.[23] He did, however, argue that the Government could not constitutionally detain him without specifically finding that his release would pose flight risk or create a danger to the community.[24]

In his majority opinion, Chief Justice Rehnquist first noted that 8 U.S.C. § 1226(c) covered "a limited class of deportable aliens—including those convicted of an aggravated felony."[25] He then explained that Congress's purposes in enacting 8 U.S.C. § 1226(c) included "deal[ing] with increasing rates of criminal activity by aliens" and the Government's "near-total inability to remove deportable criminal alien" and noted Congress's consideration of "evidence that one of the major causes of [these problems] was [the Government's] failure to detain those aliens during their deportation proceedings."[26] Finally, he highlighted the "proposition that Congress may make rules as to aliens that would be unacceptable if allied to citizens" and may rely on "reasonable presumptions and generic rules" when legislating in this area.[27]

Chief Justice Rehnquist then distinguished *Zadvydas*. First, he noted that detention of aliens while their removal proceedings were underway actually served

---

[23] *Demore*, 538 U.S. at 513-14.

[24] *Id*. at 514.

[25] *Id.* at 518.

[26] *Id.*

[27] *Id.* at 522-26.

the Government's interest in preventing flight, unlike the detention of aliens whom the Government was, for other reasons, practically unable to remove.[28]  Second, he contrasted the "brief" and "limited" period of detention during removal proceedings—"roughly a month and a half in the vast majority of cases . . . and about five months in the minority of cases"—with the "indefinite and potentially permanent" detention of aliens practically unremovable.[29]  And although the *Demore* petitioner had been detained for *six* months, Chief Justice Rehnquist explained that at least part of that delay was attributable to the petitioner's request to continue his removal hearing.[30]

In consequence of all that, Chief Justice Rehnquist held that detaining petitioner, "a criminal alien who has conceded that he is deportable, for the limited period of his removal proceedings," was constitutional.[31]

Justice Kennedy provided the fifth vote for the portion of Chief Justice Rehnquist's opinion affirming the constitutionality of the *Demore* petitioner's detention.  In a concurring opinion, Justice Kennedy first highlighted the fact that the petitioner conceded that he was "properly included in [the] mandatory detention

---

[28]  *Id.* at 527.

[29]  *Id.* at 529-31.

[30]  *Id.* at 531.

[31]  *Id.*

category" created by 8 U.S.C. § 1226(c).[32] Justice Kennedy then asserted that an alien in petitioner's shoes "could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became *unreasonable or unjustified*"; that is, "[w]ere there to be an unreasonable delay by the [Government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons."[33] Finding that not to be "a proper influence, . . . either from the statutory scheme itself or from the circumstances of this case," Justice Kennedy noted his approval of Chief Justice Rehnquist's opinion "in full."[34]

### 3. *Diop* and *Chavez-Alvarez*

In its 2011 decision in *Diop v. ICE/Homeland Security*,[35] the Third Circuit considered another habeas petition filed by an alien arguing that his automatic, unreviewed detention pursuant to 8 U.S.C. § 1226(c) was unconstitutional. Recognizing *Demore*, the Third Circuit relied on Justice Kennedy's fifth-vote concurrence to hold that "[a]t a certain point, continued detention [pursuant to 8 U.S.C. § 1226(c)] becomes unreasonable and . . . [therefore] unconstitutional[,]

---

[32]  *Id.* at 532.

[33]  *Id.*

[34]  *Id.* at 533.

[35]  656 F.3d 221 (3d Cir. 2011).

unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with [that statute's] purposes of preventing flight and dangers to the community."[36]  Recognizing that ascertaining reasonableness is "necessarily . . . a fact-dependent inquiry that will vary depending on individual circumstances," the court "decline[d] to establish a universal point at which detention will always be considered unreasonable," specifically rejecting a proposed six-month presumption of reasonableness.[37]  The Third Circuit, however, stated that "there can be no question that [the petitioner's] detention for nearly three years [without a bond hearing] was unreasonable and, therefore, a violation of the Due Process Clause."[38]

Recognizing that holding, the Third Circuit then stated its belief that "Congress [did not] intend[] to authorize prolonged, unreasonable[] detention without a bond hearing."[39]  The Third Circuit therefore used the constitutional avoidance canon to hold that 8 U.S.C. § 1226(c) "contains an implicit limitation of reasonableness," and "authorizes only mandatory detention that is reasonable in length."[40]

---

[36]  *Id.* at 232.

[37]  *Id.* at 233.

[38]  *Id.*

[39]  *Id.* at 235.

[40]  *Id.*

The Third Circuit's 2015 decision in *Chavez-Alvarez v. Warden York County Prison*[41] considered yet another habeas petition of an alien arguing that his automatic, unreviewed detention pursuant to 8 U.S.C. § 1226(c) was unconstitutional. Referencing *Diop*, reiterating that "any determination on reasonableness [is] highly fact-specific," and ostensibly rejecting any "bright-line rule," the court nevertheless found that, at the one-year mark, "the burdens to [the petitioner's] liberties" were "certainly . . . outweighed [by] any justification for using presumptions" about flight or dangerousness that were embedded in 8 U.S.C. § 1226(c).[42] The court therefore ordered that the petition be granted.

4. *Jennings*, *Borbot*, and *Guerrero-Sanchez*

In early 2018, the Supreme Court, in *Jennings v. Rodriguez*,[43] held that, because 8 U.S.C. § 1226(c) explicitly directs the Government to detain ("*shall* take into custody") certain criminal aliens, the statute is not ambiguous and is therefore impervious to the constitutional avoidance canon. It therefore overruled the Ninth Circuit's interpretation of 8 U.S.C. § 1226(c) that required bond hearings. Later in 2018, in *Borbot v. Warden Hudson County Correctional Facility*,[44] the Third Circuit recognized that *Jennings* had the effect of abrogating *Diop*'s statutory holding—i.e.,

---

[41]  783 F.3d 469 (3d Cir. 2015).

[42]  *Id.* at 474-78.

[43]  138 S. Ct. 830 (2018).

[44]  906 F.3d 274 (3d Cir. 2018).

*Diop*'s holding, based on the constitutional avoidance canon, that 8 U.S.C. § 1226(c) *itself* required bond hearings.[45] The Third Circuit, however, declared that "*Jennings* did not call into question [*Diop*'s] constitutional holding"—i.e., *Diop*'s holding that unreasonably long detention without a bond hearing violates the Due Process Clause.[46]

Another 2018 post-*Jennings* decision from the Third Circuit was *Guerrero-Sanchez v. Warden York County Prison*,[47] where the court considered a habeas petition filed by an alien detained pursuant to 8 U.S.C. § 1231(a)(6)—i.e., an alien whose removal proceedings were complete and was subject to an order of removal, just like the *Zadvydas* petitioner. Concerned about the constitutional concerns inherent in "prolonged detention" and determining that, after a certain point, "the private interests at stake [become] profound and the risk of an erroneous deprivation of liberty . . . substantial," the Third Circuit used the constitutional avoidance canon to interpret 8 U.S.C. § 1231(a)(6) as requiring a bond hearing after six months.[48]

### B.    Application to Ms. Kleinauskaite's Detention

To resolve Ms. Kleinauskaite's pending EAJA petition, this Court must determine when, exactly, Ms. Kleinauskaite's detention became unreasonable.

---

[45]    *Id.* at 278.

[46]    *Id.*

[47]    905 F.3d 208 (3d Cir. 2018).

[48]    *Id.* at 225.

Several of the cases considered the constitutionality of unreviewed detention at the six-month mark. *Diop* specifically rejected a proposed six-month limitation on unreviewed detention. *Demore* specifically approved six-month-long unreviewed detention for criminal aliens. And *Zadvydas* and *Guerrero-Sanchez* approved six-month-long unreviewed detention for non-criminal aliens. In fact, since *Zadvydas* and *Guerrero-Sanchez* used the constitutional avoidance canon, those cases necessarily found that a six-month-period of unreviewed detention doesn't even raise a constitutional question. Therefore, it must be the case that Ms. Kleinauskaite's detention was still reasonable after six months.

Several cases—*Zadvydas, Diop, and Chavez-Alvarez*—indicate or imply that determining when unreviewed detention becomes unreasonable is a fact-intensive inquiry. *Chavez-Alvarez*, however, ascertained that, at the one-year mark, unreviewed detention necessarily becomes unreasonable.[49] Although *Chavez-Alvarez* recognized that the exact moment of unreasonabless could have occurred sometime before that moment, this Court finds the twelve-month milestone

---

[49] *Chavez-Alvarez* contained extensive analysis about the underlying removal proceedings—specifically, whether the petitioner's actions were the cause of those proceedings' delay and, if so, whether petitioner's action were in good faith. However, the Government does not argue that any actions taken by Ms. Kleinauskaite vis-à-vis her asylum were taken in bad faith. And since the Government bears the burden on EAJA petitions, *see Hanover Potato Products, Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993) ("The burden of demonstrating substantial justification for its position rests squarely on the government agency."), this Court will presume that the Government has no issue with Ms. Kleinauskaite's handling of her removal proceedings.

appropriate in this case for determining when Ms. Kleinauskaite's detention escaped the realm of reason.

## III. CONCLUSION

For those reasons, the Court will grant Ms. Kleinauskaite's Motion for Attorneys' Fees and order the Government to compensate Ms. Kleinauskaite for the attorneys' fees she incurred after May 17, 2018. An appropriate order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge